# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMIL SHABAZZ
  fka Garrett S. Brandon

                Petitioner,     :     Case No. 3:19-cv-014

   - vs -                                District Judge Walter H. Rice
                                                 Magistrate Judge Michael R. Merz

JIM HAVILAND, Warden,
  Allen/Oakwood Correctional Institution
                                         :
                Respondent.

# REPORT AND RECOMMENDATIONS

This is an action for writ of habeas corpus under 28 U.S.C. § 2254. Although originally filed in the United States District Court for the Northern District of Ohio, the case was transferred to this Court because the conviction from which Shabazz seeks relief was entered in the Greene County, Ohio Court of Common Pleas in Case No. 1988-CR-105 (Petition, ECF No. 2, ¶ 1). The transfer is permissible under 28 U.S.C. § 2241(d). The case is properly venued at the Dayton location of court under S.D. Ohio Civ. R. 82.1(f).

As with all habeas corpus cases filed at the Dayton location of court, the case has been referred to the undersigned by General Order DAY 13-01.

The case is before the Court for initial review under Rule 4 of the Rules Governing § 2254 Cases. Under Rule 4, the clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the

judge must dismiss the petition and direct the clerk to notify the petitioner.

The prior history of this matter is recited in the opinion of the Second District Court of Appeals on Shabazz's appeal from denial of his Motion under Rule 52(b) in the Greene County Common Pleas Court.

> {¶ 3} This case arises from the 1988 death of Stephon Johnson who was shot while on the campus of Central State University (CSU). At trial, the State presented evidence that Shabazz, Terrance Burgan, Frank Minor, Leonard Collins, Randy Brown and Van Cox were members of an organization known as the Mad Dogs. On February 6, 1988, Shabazz was involved in an altercation with Johnson's brother. On the morning of February 8, 1988, Shabazz informed his group that the Johnson brothers and their friends were on campus, carrying bats and guns, looking for Shabazz. The six members of the Mad Dogs drove to the CSU campus in two different cars. Some of the members, including Shabazz, carried firearms. Johnson was shot and killed by Frank Minor.
>
> {¶ 4} In March 1988, Shabazz was indicted on one count of complicity to murder, one count of inciting violence, one count of aggravated riot and one count of involuntary manslaughter. All four counts carried attendant firearm specifications. Following a jury trial, Shabazz was convicted of all charges except complicity to murder. He was sentenced to a prison term of eight years to 28 years. Shabazz filed a direct appeal, and this court affirmed the judgment of the trial court. *State v. Brandon*, 2d Dist. Greene No. 88 CA 57, 1989 Ohio App. LEXIS 2597, 1989 WL 72232 (June 28, 1989), *appeal dismissed* 47 Ohio St.3d 705, 547 N.E.2d 986 (1989).
>
> {¶ 5} On December 12, 2016, Shabazz, acting pro se, filed a document entitled "52(B) Plain Error Motion Base on Ineffective Assistance and False testimony Provided by State's Witnesses." In the motion, Shabazz alleged that new evidence demonstrated that Burgan and the other members of the Mad Dogs lied about Shabazz's involvement in Johnson's death. The evidence consisted of a 2009 statement under oath Burgan gave to Shabazz's counsel. In the statement, Burgan asserted that Shabazz was "not there" when Johnson was killed. Burgan further stated that he and the other remaining co-defendants lied about Shabazz's involvement due to pressure and promises made by the authorities. When asked whether he had recanted his story prior to the deposition, Burgan replied, "No, I never had a chance to." Dkt. No. 82.

{¶ 6} The State filed a response in which it asserted that Crim.R. 52(B) was not a viable method for challenging the conviction. The State argued that Shabazz's motion should be considered either a motion for a new trial under Crim.R. 33 or a petition for postconviction relief. The State further argued that the motion was not timely filed. Shabazz filed a response in which he insisted that his motion was a plain error motion under Crim.R. 52(B). He further stated that he did not have the evidence to support his claim until 2016.

{¶ 7} The trial court agreed with the State that the motion was actually one for postconviction relief or new trial, and that Crim.R. 52 did not provide the relief sought by Shabazz. The trial court found that the motion for relief was untimely and, thus, overruled the motion. Shabazz appeals.

*State v. Shabazz*, 2nd Dist. Greene No. 2017-CA-11, 2017-Ohio-7199 (Aug. 11, 2017). The Second District affirmed the denial of relief and the Supreme Court of Ohio declined jurisdiction over an appeal. *State v. Shabazz*, 151 Ohio St. 3d 1511 (2018).

In the body of its opinion, the Second District cites its decision on the original appeal, *State v. Brandon*, 2nd Dist. Greene No. 88 CA 57, 1989 Ohio App. LEXIS 2597, 1989 WL 72232 (Jun. 28, 1989). On November 29, 1989, the Supreme Court of Ohio dismissed Shabazz's appeal for want of a substantial constitutional question and denied appellate review. *State v. Brandon*, 47 Ohio St. 3d 705 (1989). Shabazz's conviction became final on direct appeal ninety days later when his time to seek U.S. Supreme Court review expired on February 27, 1990.

28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

3

>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Prior to adoption of the AEDPA on April 24, 1996, there had never been a statute of limitations on habeas corpus petitions, although the Rules Governing § 2254 Proceedings permitted dismissal on a laches basis if the Petitioner's delay had prejudiced the State's ability to defend. Thus, a habeas petitioner could file at any time. In passing the AEDPA, Congress did not adopt a grace period during which habeas claims which had accrued more than a year prior to April 24, 1996, could be filed. The absence of such a grace period would have rendered the new statute of limitations unconstitutional as to any habeas claims which accrued before April 24, 1996. *Block v. North Dakota,* 461 U.S. 273, 286 n.23 (1983); *Texaco, Inc., v. Short,* 454 U.S. 516, 527 n.21 (1982), *quoting Wilson v. Iseminger,* 185 U.S. 55 (1902); citing *Terry v. Anderson*, 95 U.S. 628, 632-33 (1877), and *Sohn v. Waterson*, 84 U.S. 596, 599 (1873). Therefore, no petition filed on or before April 24, 1997 — one year from the date of AEDPA's enactment — may be dismissed for failure to comply with § 2244(d)'s time limit. *Brown v. O'Dea,* 187 F.3d 572, 577 (6th Cir. 1999), *vacated and remanded on other grounds at* 530 U.S. 157 (2000). Shabazz's conviction became

final on direct appeal several years before AEDPA was enacted. Therefore, the statute of limitations began to run in this case on April 14, 2996, and expired one year later. Shabazz did not file his Petition until January 7, 2019[1]. Thus, it is not timely under § 2244(d)(1)(A).

Paragraph 18 of the required form for § 2254 petitions provides: "If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition." Shabazz left this portion of the Petition blank (ECF No. 2-1, PageID 16). He does not qualify under § 2244(d)(1)(B), because no state-created impediment prevented him from filing on time. Nor does he qualify under § 2244(d)(1)(C) because he does not rely on any new constitutional right recognized by the United States Supreme Court and made retroactive.

28 U.S.C. § 2244(d)(1)(D) makes the one-year statute run from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. The factual predicate of Ground One is that all the State's witnesses at trial lied (Petition, ECF No. 2, PageID 18). That fact, if it is a fact, was known to Shabazz during trial.

The evidence Shabazz presents to prove those witnesses lied is the February 18, 2009, deposition testimony of Terrance Burgan; a copy of the deposition is attached to the Petition (ECF No. 2-2, PageID 45-47). While Burgan's testimony supports Shabazz's claim that he was not present at the shooting of Frank Minor, the underlying factual predicate ("I was not there.") was known to Shabazz at the time of trial. Moreover, even if the Court were to count the Burgan deposition as the date of discovery of the factual predicate, the deposition occurred almost ten years before Shabazz filed his Petition.

---

[1] Although the Petition was not received by the Clerk until January 14, 2019, Shabazz claims under penalty of perjury that he deposited the Petition in the prison mail system on January 7, 2019 (ECF No. 2, PageID 17). Under the so-called mailbox rule, he is entitled to have the Petition deemed filed January 7, 2019. *Houston v. Lack*, 487 U.S. 266, 275-76 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

Petitioner's Ground Two claims the prosecutors at trial knowingly presented false testimony (ECF No. 2-1, PageID 19). As with Ground One, Shabazz knew the factual predicate of the claim at the time of trial. In Ground Three, Shabazz claims he received ineffective assistance of trial counsel because his trial attorney, although being assigned as a public defender, insisted on being paid by Petitioner's family and friends. *Id*. at PageID 20. This also is a fact Shabazz knew at the time of trial. Ground Four, in which Shabazz claims that his conviction was the product of witnesses providing false testimony in exchange for immunity, *id*. at PageID 21, relies on the same factual predicate as Grounds One and Two.

Petitioner claims the Ohio courts were wrong to classify his Rule 52(B) motion as either a delayed motion for new trial under Ohio R. Crim. P. 33 or a petition for post-conviction relief under Ohio Revised Code § 2953.21. Both of those procedures, which are recognized by Ohio as methods of collaterally attacking a criminal judgment, have strict time deadlines. On the other hand, as the Second District recognized, Ohio R. Crim. P. 52(B) does not provide a procedure for collaterally attacking a criminal judgment:

> {¶ 9} Initially, we note that Shabazz's notice of appeal pertains only to the trial court's denial of his Crim. Rule 52(B) motion. Further, in all of his assignments of error, Shabazz argues that he is entitled to relief under Crim.R. 52(B) because the State, trial counsel and the trial court permitted him to be convicted based upon false testimony provided by the State's witnesses. Specifically, he claims that Burgan's statement under oath proves that Burgan and the other Mad Dog members provided false testimony implicating Shabazz in Johnson's death.
>
> {¶ 10} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "However, the plain-error standard in Crim.R. 52(B) is available only on direct appeal and 'does not create a free-standing procedure to obtain review otherwise.'" *State v. Strickland*, 10th Dist. Franklin No. 14AP-307, 2014-Ohio-5105, ¶ 15, quoting *State v. Ayala*, 10th Dist. Franklin Nos. 12AP-1071, 12AP-1072, 2013-Ohio-1875, ¶ 14, citing *United*

> *States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816
> (1982). *Accord*, *State v. Frazier*, 8th Dist. Cuyahoga No. 88331,
> 2007-Ohio-1851, ¶ 7.
>
> {¶ 11} Thus, although Shabazz insists that his motion is properly
> brought as a Crim.R. 52(B) motion, we agree with the trial court that
> the motion is more properly considered a petition for postconviction
> relief under R.C. 2953.21 or a motion for new trial under Crim.R.
> 33. This court has noted that "no name" or irregular motions "must
> be categorized by a court in order for the court to know the criteria
> by which the motion should be judged." *State v. Clark,* 2017-Ohio-
> 120, 80 N.E.3d 1251, ¶ 12 (2d Dist.), quoting *State v. Bush*, 96 Ohio
> St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, ¶ 10. "Under certain
> circumstances, it is also appropriate for courts to recast motions that
> are unambiguously named and presented under a specific rule when
> said rule has no application to the judgment at issue." *Id.*, citing *State
> v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431.

*State v. Shabazz,* 2017-Ohio-7199.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825) (Marshall C.J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018) (Thapar, J. concurring). A federal habeas court may not re-evaluate a state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (*per curiam*).

The question of whether the Ohio Rules of Criminal Procedure creates a procedure for collateral attack on a criminal judgment is a question of Ohio law. To put it another way, the United States Constitution does not require States to provide a remedy such as Shabazz contends

exists.

Although the statute of limitations is an affirmative defense which is forfeited if not pleaded as required by Fed. R. Civ. P. 8(c), a district court may dismiss a habeas petition *sua sponte* on limitations grounds when conducting an initial review under Rule 4 of the Rules Governing § 2254 Cases. *Day v. McDonough*, 547 U.S. 198 (2006) (upholding *sua sponte* raising of defense even after answer which did not raise it), abrogating *Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002). However, before doing so it must give the Petitioner notice and an opportunity to respond. *Shelton v. United States*, 800 F.3d 292 (6th Cir. 2015). If Shabazz files objections to this Report, then he should provide any response he has to the analysis that his Petition is barred by the statute of limitations.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice as barred by the statute of limitations. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

January 18, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party=s objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).